UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RASHANE L. JONES,

     Plaintiff,

v.                                             Case No. 3:17-cv-775-J-32PDB

DR. GIRARDEAU D.D.S.,

     Defendant.

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a Third Amended Complaint for Violation of Civil Rights (Doc. 72) against Dr. Girardeau. Plaintiff alleges that Defendant was deliberately indifferent to his serious dental needs between January 2017 and June 2017. The parties have filed cross motions for summary judgment and responses. See Defendant's Motion for Summary Final Judgment (Doc. 82), with exhibits (Doc. 84); Plaintiff's Declaration opposing Defendant's Motion (Doc. 85); Plaintiff's Motion for Summary Judgment (Doc. 79); and Defendant's Response in Opposition to Plaintiff's Motion (Doc. 86). The motions are ripe for review.

## II.     Plaintiff's Third Amended Complaint

Plaintiff alleges that Defendant was deliberately indifferent by failing to provide and by delaying necessary dental care and treatment. Plaintiff details the dental treatment he received beginning upon his incarceration in 2015. See Doc. 74 at 2-3. In January 2017, Defendant became involved in Plaintiff's dental care when Plaintiff was transferred to Florida State Prison. See id. at 4. On January 19, 2017, and March 21, 2017, Plaintiff wrote dental requests seeking information regarding his appointment for the treatment that had been recommended previously by dentists at other institutions. Id. Plaintiff was advised that he was on the list to be seen, but the list "is very long." Id. at 5. Plaintiff then submitted an informal grievance, complaining that he was being deprived of dental treatment. Id. Defendant responded to Plaintiff's grievance, acknowledging that his multiple requests and grievances had been reviewed and that Plaintiff was on the list and would be seen soon. Id.

About three weeks later, after not being seen, Plaintiff filed a formal grievance again complaining about not receiving dental treatment. Id. at 5-6. Defendant responded to Plaintiff's grievance advising that the issue had been previously addressed in Plaintiff's informal grievance, and if he was having problems and could not wait for his scheduled appointment, he should submit a sick call request. Id. at 6.  Because Plaintiff had never been told previously to submit a sick call request, he submitted a request to dental asking several

2

questions. Id. Dr. Franklin responded and advised Plaintiff that dental sick-call is limited "to severe pain/discom[fort and] swelling." Id. He further advised Plaintiff that Plaintiff's complaints "are considered routine dental treatment," and that he was "on the waiting list for routine care, which is very long, and will be scheduled accordingly." Id.

Plaintiff appealed the denial of his formal grievance. See id. at 6-8. Plaintiff also filed a motion in this Court requesting injunctive relief. See id. at 7 (citing case no. 3:17-cv-589-J-39PDB). On May 25, 2017, this Court dismissed the case without prejudice but directed the Clerk to mail a copy of the order and Plaintiff's motion to the Warden of FSP and the Inspector General for an investigation into Plaintiff's assertions, if deemed appropriate. Id. at 7-8. Plaintiff alleges that the Court's order "was the action that triggered the Dental department, 6 days later on June 1st 2017[,] to finally see the Plaintiff." Id. at 8. He further alleges that "[b]y this time, the Defendant retired as F.S.P. Dentist." Id.

On June 9, 2017, his grievance appeal was approved, and he was told that he would be seen by the institution. Id. at 8. Before receiving that response, on June 1, 2017, Plaintiff was seen in the dental department. Id. Plaintiff goes on to describe the dental treatment he received thereafter. See id. at 8-11.

3

Plaintiff's claim is that Defendant failed to treat him and delayed necessary treatment between January 2017 and June 2017. He argues that the dental treatment he received from June 2017 through April 2018 "is all of the treatment that the Plaintiff needed while under the care of the Defendant." Id. at 11. Plaintiff asserts that he was under Defendant's care for 5 months, but Defendant failed to provide any treatment for his pain or bleeding. Id. He seeks a declaratory judgment and monetary damages.

Plaintiff attached to his Third Amended Complaint various records. His pertinent inmate requests and grievances are summarized below.

On January 19, 2017, Plaintiff wrote the following on an Inmate Request form:

> I just came back from outside court, if you look in my file you'll see that a week before[,] I was schedule[d] for my first teeth cleaning procedure, which was the second week of July. I was transported back to outside court [on] July 8th 2016. My appointment was schedule[d] I think on the 13th or 14th of July 2016. I wrote a request notifying U.C.I. Dental that I would be gone. Could you please schedule me as soon as possible[?] . . . I've been on the list since August of 2015 and when I finally am about to get my first treatment I was transported to outside Court. My exam was completed on all of my teeth and the fee has already been taken out for my treatment. Please see me soon[.] I have very serious teeth issues.

Doc. 74-6 at 2 (some internal formatting modified). Plaintiff received a response notifying him that he was still on the list. Id.

4

On March 12, 2017, he wrote another request:

> I am writing in regards to my appointment for dental treatment. I was schedule[d] back in July, but I went to outside court. Have I been pushed back to the end of the list?
>
> I have some very serious teeth problems and I have been trying to be treated since August of 2015 which is when I signed up for the dental plan.
>
> It's going on 2 years now and I haven't received one treatment.
>
> I have major teeth problems including bleeding and aching.

Doc. 74-7 at 2 (some internal formatting modified). A dental assistant responded: "You are on the list, the list is very long." Id.

On March 29, 2017, Plaintiff submitted an informal grievance "in regards to [him] being deprived of dental treatment." Doc. 74-8 at 2. He stated:

> I requested dental treatment all the way back in August 2015. Due to me being/keep getting transferred (not bad behavior) every institution is placing me at the back of the[ir] list, when I've been signed up since August 2015. This is not fair to me and not healthy for my teeth and what[']s left of my teeth. I arrived here at F.S.P. January 18, 2017, and upon my second request, I've been told that I am on the list and the list is very long. This is not fair to me, my teeth bleeds at its own will, my teeth from looking at it without any equipment you can tell it needs treatment. I have attached every request from different institutions telling me "I am on the list" since August of 2015. I really need dental treatment and after seeing how bad my teeth look you would agree. Please see me sooner.

5

Doc. 74-8 at 2. Defendant responded to Plaintiff's grievance: "Have reviewed your multiple request and grievances. You are on the list and shall be seen soon." Id.

On April 24, 2017, Plaintiff authored an "emergency grievance . . . in regards to [him] extremely needing dental treatment." Doc. 74-9 at 2. He reiterated that he signed up for the dental plan in 2015, but he had not received any treatment. Id. He complained that his teeth were in "horrible shape" and they "ache[] and bleed[] at will." Id. He requested to be seen because his teeth have "gotten worse" and he "really need[s] to be seen to receive dental treatment to stop the bleeding and the tooth aches." Id.

On April 25, 2017, Defendant advised Plaintiff that his grievance was not accepted as an emergency and would be processed within the normal timeframe. Id. at 3. On May 2, 2017, Plaintiff was advised that his issue was previously addressed by his informal grievance and he was further advised to access sick call if he could not wait for his next scheduled appointment. Id. at 4.

On May 7, 2017, Plaintiff submitted an inmate request asking various questions relating to his dental treatment and whether sick call could address his concerns. Doc. 74-10 at 2. He received the following response on May 15, 2017: "Dental sick call treatment is limited to severe pain/discomfort/swelling. The items you have referenced are considered routine dental treatment. You

6

are on the waiting list for routine care, which is very long, and will be scheduled accordingly." Id.

Plaintiff appealed the denial of his formal grievance. See Doc. 74-11 at 2-3. He reiterated all his complaints and noted that he was in pain and his "teeth bleeds at will. Ibuprofen issued from the officers barely works anymore." Id. at 3. His appeal was "approved to the extent that [he would] be seen by dental. The institution ha[d] 30 days to implement this action." Doc. 74-12 at 2.

Plaintiff's dental treatment records reflect that on May 31, 2017, Plaintiff was scheduled for a call out per Dr. Shields, and he was seen by Dr. Franklin on June 1, 2017. Doc. 74-13 at 2.

### III. Summary Judgment Standard of Review

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

7

no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted); see Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)). "A 'mere scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves

judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

**IV. Parties' Positions**

Defendant seeks entry of summary judgment in his favor, arguing that there was no deliberate indifference for failure to provide treatment or for delay in providing treatment, and that Plaintiff simply disagrees with the treatment he was provided. In support of his position, Defendant submitted the Declaration of Dr. Harry W. Hatch, the Statewide Dental Director for Centurion of Florida, LLC. Doc. 84-1. Dr. Hatch averred in pertinent part:

> During his time of employment with Centurion, Dr. Girardeau's title was "Senior Dentist."
>
> As a Senior Dentist, Dr. Girardeau was one of a team of dental health professionals working for Centurion. Dr. Girardeau's employment duties included examining and treating inmates, as well as reviewing inmates' charts and responding to inmates' grievances.
>
> As a Senior Dentist providing dental care and treatment to inmates in the State of Florida, Dr. Girardeau was under a duty to follow Florida Department of Corrections rules and regulations.
>
> These rules provide that inmates are to be treated for a dental emergency only in cases of a) uncontrolled bleeding; b) visible facial swelling; and/or c) a broken jaw.[1]

---

[1] Plaintiff points out that this assertion is contrary to the regulations. See Doc. 85 at 3-4 (citing Fla. Admin. Code r. 33-402.101, which states: "Emergency

9

>> Plaintiff's dental treatment records do not show that Plaintiff was suffering from any of those emergency dental conditions at any time relevant to this lawsuit.
>
>> Plaintiff's dental treatment records further show that based on his professional experience, training and expertise, when responding to Plaintiff's grievances Dr. Girardeau arrived at the same conclusion that Plaintiff was not having a dental emergency.

> Plaintiff's dental treatment records reflect that Plaintiff has been provided adequate dental treatment since the beginning of his incarceration in April of 2015. The following summarizes the adequate treatment provided to the Plaintiff:
>
> a. Plaintiff's first day of incarceration was April 6, 2015. The very next day on April 7, 2015, Plaintiff underwent dental orientation.
>
> b. The day after that on April 8, 2015, Plaintiff received his initial visual, dental, head and neck examination. There was no need for a referral to the oral surgeon at that time.
>
> c. On May 7, 2015, Plaintiff consulted with Dentist Dr. Franklin regarding pain to his upper right and left front teeth. Dr. Franklin assessed the Plaintiff and prescribed a treatment plan which included extraction of tooth no. 11, as well as prescription of pain and other medications.
>
> d. On May 12, 2015, Plaintiff again consulted with Dentist Dr. Franklin. Plaintiff complained that his gum was sore at the location where his tooth had been extracted "last week." Dr. Franklin

---

dental services include treatment for trauma, control of bleeding, and acute infection.").

    prescribed pain medication and saline solution for the Plaintiff.

e. On July 6, 2015, Plaintiff consulted with Senior Dentist Dr. D. Danburg.

f. On August 19, 2015, Plaintiff underwent a periodic dental exam with Dentist Dr. S. Delpiano.

g. On November 9, 2015, Plaintiff was transferred from "ACI" (Apalachee Correctional Institution) to Union Correctional Institution, and Senior Dentist Dr. Scarlett reviewed Plaintiff's chart. Plaintiff was provided dental orientation.

h. On March 4, 2016, and again on March 31, 2016, Plaintiff was a "no show" for a consultation regarding his dental treatment plan. The reasons that Plaintiff was a no show are listed as unknown, however it is noted that it could have been due to a lack of escorts/security for the Plaintiff.

i. On April 12, 2016, Plaintiff was again a "no show" for a consultation regarding his dental treatment plan. The reasons that Plaintiff was a no show are listed as unknown, however it is noted that it could have been due to a lack of escorts for the Plaintiff.

j. Two days later on April 14, 2016, Plaintiff consulted with Dentist Dr. G. Scarlett. Plaintiff underwent radiography, and his teeth were charted. A treatment plan was formulated and discussed with the Plaintiff.

k. On January 18, 2017, Plaintiff was transferred from "UCI" (Union Correctional Institution) to "FSP" (Florida State Prison), and Defendant Dr.

       Girardeau reviewed Plaintiff's chart. Plaintiff was provided dental orientation.

l. On May 31, 2017, Plaintiff was scheduled for a callout appointment per Dr. Shields. The next day on June 1, 2017, Plaintiff consulted with Dentist Dr. Franklin for a cleaning of Plaintiff's teeth. Dr. Franklin prescribed pain medication for the Plaintiff after the cleaning.

m. Plaintiff's appointment of September 3, 2017, was rescheduled due to a hurricane. Plaintiff consulted with Dentist Dr. Franklin on September 25, 2017, and again on October 31, 2017, regarding his dental treatment plan.

n. On December 7, 2017, Plaintiff was seen for a chart review and the notes state that Dr. Girardeau will be consulted for approval.[2] On December 28, 2017, a Prosthetic Approval form was submitted for dentures for the Plaintiff.

o. Plaintiff consulted with Dr. Franklin regarding his dental treatment on January 10, and again on January 29, 2018. On March 8, 2018, Plaintiff consulted with Senior Dentist Dr. D. Griggs regarding tooth no. 32. Plaintiff underwent x-rays, which were inconclusive. Dr. Griggs prescribed pain and other medication, and sent Plaintiff to RMC for further testing.

p. Plaintiff consulted with Senior Dentist Dr. Scarlett on March 28, 2018. Dr. Scarlett noted that tooth no. 32 was extracted on March 8,

---

[2] Given that this note refers to consulting with Defendant, it seems that he had not retired as Plaintiff believed. See Doc. 74 at 8; see also Doc. 85 at 5 (asserting that an officer told Plaintiff that Defendant had retired; regardless, arguing that "this does not clear up what transpired between the months of January - May/June 2017").

2018, and prescribed pain medication and additional treatment;

q. Plaintiff consulted with Senior Dentist Dr. B. Carpenter on April 3, 2018, and again on April 17, 2018, and consulted with Senior Dentist Dr. Thomas on May 1, 2018;

r. On April 3, 2019, Plaintiff consulted with Senior Dentist M. Lopez regarding swelling and pain to tooth no. 17 area. Plaintiff was prescribed and underwent an x-ray of the subject area of tooth no. 17. Dr. Lopez noted that the roots of the subject tooth were overlapping the inferior canal. Dr. Lopez completed a Consultation Request Form for surgical removal of tooth no. 17, at Reception Medical Center ("RMC");

s. On May 16, 2019, Dental Assistant M. Sanders noted that Plaintiff refused to go to RMC for the extraction of tooth no. 17;

t. That same day on May 16, 2019, Plaintiff signed a Refusal of Treatment Form, refusing extraction of tooth no. 17;

Plaintiff was treated and monitored on additional occasions not outlined above, subsequent to July of 2019.

Plaintiff has been provided adequate dental care and treatment since April of 2015, and currently continues to receive adequate dental treatment. None of the dental treatment records I reviewed for the Plaintiff show that Dr. Girardeau, or any of Plaintiff's treating professionals, refused to provide or delayed any required or necessary dental care.

Instead, the dental treatment records show that Plaintiff received substantial and adequate

13

>> dental treatment to include without limitation, extraction of decayed teeth, teeth cleaning, prescription medications, numerous consultations with dentists and other dental professionals, formulation of a treatment plan for the Plaintiff and discussion of same with him, as well as x-rays, among other types of treatment.
>
>> The dental treatment records further show that Plaintiff has refused treatment on at least one occasion when he refused to undergo the recommended extraction of tooth no. 17.
>
>> Finally, Plaintiff's dental records show that injuries to Plaintiff's teeth, if any, were caused by the dozens of years Plaintiff failed to treat and otherwise take care of his teeth, and not by any actions or omissions of Dr. Girardeau or any other dental health professional who treated the Plaintiff.

Doc. 84-1 at 2-5 (some paragraph enumeration omitted and formatting modified). Defendant also filed copies of Plaintiff's pertinent dental records. Id. at 7-26.

Plaintiff responds by arguing that Defendant failed to provide and further delayed his needed dental care between January 2017 and June 2017. Doc. 85 at 1. Plaintiff contends that Defendant cannot be shielded by the treatment provided by other dentists, because Defendant did nothing "to abate the Plaintiff's pain, bleeding and other diagnosis made by other dentist before the Plaintiff became an inmate at Florida State Prison." Id. He asserts that Defendant reviewed his dental records and Plaintiff's grievances regarding his

14

need for dental care, yet Defendant did nothing to help Plaintiff. See id. at 1-2. Plaintiff attached to his response some dental records and a copy of the regulations governing dental services.

Plaintiff also seeks summary judgment in his favor. See Doc. 79. He contends that Defendant knew he needed dental care but failed to provide any treatment. Attached to his motion are some dental records, discovery requests and responses, grievances and responses, and a copy of the regulations governing dental services. Defendant responds by incorporating the arguments made in his motion, and disputing Plaintiff's arguments. Doc. 86.

## V.     Analysis

"To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

15

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted).

Deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Dang, 871 F.3d at 1280; Melton v. Abston, 841 F.3d 1207, 1223 & n.2 (11th Cir. 2016). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v. Warden, FCI Talladega, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[3] Further,

---

[3] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type

> "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280. "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)).

Defendant does not argue that Plaintiff did not have a serious medical need relating to his dental treatment. Thus, the Court so assumes. There is, however, no evidence to suggest that Defendant acted with deliberate indifference with respect to Plaintiff's dental care.

It is undisputed that Plaintiff did not receive any dental care between January 18, 2017 and May 31, 2017. Dr. Hatch's affidavit, which is supported by the record, shows that Defendant reviewed Plaintiff's dental treatment

---

of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

17

notes, requests, and grievances during this timeframe, and he considered Plaintiff's dental treatment to be of a routine nature. Plaintiff was on the list to receive routine dental treatment, and he eventually did receive that treatment.

Without any evidence to the contrary, that Plaintiff disagreed with Defendant's assessment of his dental needs is insufficient to support an Eighth Amendment claim. See Dugan v. Warden, FCC Coleman, 673 F. App'x 940, 945 (11th Cir. 2016) ("[T]hat Dugan disagreed with the prison dental staff's assessment about the urgency of Dugan's dental condition is insufficient to support an Eighth Amendment violation." (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991))). Notably, when Plaintiff was at UCI before going to "outside court" and then to FSP, he saw Dr. Scarlett on April 14, 2016, and Dr. Scarlett discussed a treatment plan with Plaintiff. After that appointment, Plaintiff submitted two inmate requests, which were answered by a dental assistant at UCI on June 16, 2016 and July 6, 2016. See Doc. 84-1 at 13. Plaintiff remained at UCI for more than 80 days after his April 14, 2016 appointment with Dr Scarlett before going to "outside court," and he received no additional treatment at UCI. While it is unclear what Dr. Scarlett's "treatment plan" entailed, in Plaintiff's April 24, 2017 grievance, he states, "My teeth were examin[ed] last year at Union Correctional Institution and I was told that I would have to get my teeth clean[ed] 3 times." Doc. 74-9 at 2. When Plaintiff was received at FSP on January 18, 2017, Defendant reviewed his dental chart

18

on January 24, 2017, and noted that Plaintiff had an "active t[reatment] plan." Doc. 84-1 at 13. On June 1, 2017, Plaintiff saw Dr. Franklin who cleaned his teeth and prescribed pain medication after the cleaning. Id. at 4, 15. Plaintiff consulted again with Dr. Franklin on September 25, 2017, and October 31, 2017. Id. at 4, 16. On December 7, 2017, he was seen for a chart review and on December 28, 2017, an approval form was submitted for dentures. Id. at 4, 16-17. Even after Plaintiff was seen, none of the dental records show that he was in need of urgent or emergency treatment or consideration.

Insofar as Plaintiff claims Defendant delayed his dental care, Plaintiff has failed to present any "verifying medical evidence" showing that he suffered any "detrimental effect" as a result of the alleged delay. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). The record supports Defendant's position. Plaintiff's dental needs were not so serious as to warrant more urgent care; rather, he remained on the list to obtain routine treatment, which he received.

Upon review of the record and consideration of the evidence filed along with the parties' positions, the Court finds that Defendant is entitled to entry of summary judgment in his favor. Accordingly, it is

19

**ORDERED**:

1. Defendant's Motion for Summary Final Judgment (Doc. 82) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (Doc. 79) is **DENIED**.

3. Attorney Ana C. Françolin's Motion to Withdraw as Counsel of Record for Defendant Dr. Girardeau (Doc. 88) is **GRANTED**, because the Court finds good cause and Defendant will remain represented by other counsel. The Clerk shall terminate Ana C. Françolin as counsel of record for Defendant Dr. Girardeau.

4. The Clerk shall enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 10th day of August, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/7
c:
Rashane L. Jones, #130829
Counsel of Record